JANVIER, Judge.
Plaintiff, Ernest L. Porter, a truck driver in the employ of one of the defendants, Summers Interstate Electric Company, Inc., appeals from a judgment dismissing his suit for workmen’s compensation. He alleges that he injured his left knee in an automobile accident while performing the duties of his employment, and is totally and permanently disabled.
The employer’s insurer was also made defendant and liability was denied in its answer.
After a trial on the merits the District Judge concluded that plaintiff had not sustained an injury to his knee, and, referring to the plaintiff, in his reasons, stated: “ * * * the Court frankly doesn’t believe him, and the Court wants to put that in the record.” We agree with this conclusion.
Plaintiff says that, as the result of nausea caused by his having imbibed a soft drink in which there was a dead roach, he “blanked out” and “lost control” of his vehicle, causing it to “jump the neutral ground” and “run into a tree”; that he hit his left knee on the bottom of the dashboard and sustained this “serious injury.”
The accident is alleged to have occurred on Friday, July 1, 1966, at 9:30 a.m., and because of the intervening weekend and the 4th of July holiday, he says that he was unable to see a doctor until July 6. It may be said at this point that while it may have been slightly more difficult to obtain medical treatment because of the holiday period,he could have been seen by a doctor if indeed there was an injury as serious as plaintiff would have it b.elieved.
The fact is that he went to see his doctor on Wednesday, July 6, “mostly for an upset stomach,” and the doctor found that he did *845 have symptoms of this condition. No complaint was made of any knee injury until July 18 on a second visit to the doctor. At that time Porter requested a complete physical examination, complaining that his knee “had been bothering him,” though he reported no pain or true discomfort. An examination of the knee showed no abnormality, that is, swelling, redness or tenderness. The doctor did not see him again until September 8; he then complained of his knee and the doctor found some difficulty there, injected it with pain and anti-inflammatory medicine, wrapped the knee, and suggested that he contact a specialist.
Plaintiff says that he had on his seat belt when he struck the tree and later climbed out of the truck, which was damaged on the left front fender and the headlight. Counsel for plaintiff insists that plaintiff struck his knee violently on the dashboard in this alleged accident. The record convinces us that contact of the truck with the tree, if there was any, was very slight and was only what might be termed a side swipe as only the side was scratched, which the company found so slight that it was not repaired. There was no break in the headlight; in fact, there was only damage to the rearview mirror which extends from the side of the left front window of the truck to afford a view of vehicles in the rear.
We find that from the time of the alleged accident no one except the plaintiff himself and his wife and sister, who lives with them, knew anything at all about any such injury. His wife testified that hep husband went to see the doctor about his knee; that it was swollen, and she had used hot towels and a rubbing preparation a few times; that the swelling seemed to be “leaving,” but he was complaining of pain in it on Monday. Of course, his sister attempted to corroborate his wife’s testimony. Evidently the District Judge did not believe their testimony, nor do we.
The manager of the company testified that this was plaintiff’s second accident while in its employ, and that he discharged him the same day on which he had had the accident, July 1, 1966. He said that Porter did not complain of either being ill or having injured his knee. However, four months later Porter called him on the telephone to say that he was going to a doctor and had injured his knee in the alleged accident.
Plaintiff introduced in evidence a copy of a completed form, “separation notice,” of the Division of Employment Security. This document shows that the last day plaintiff worked was July 1, 1966, and also that he was separated from his job because of “reckless driving.”
Dr. Blaise Salatich, the specialist who saw plaintiff’s knee four months after the alleged injury to it, found swelling and said that Porter had received “a crushing type injury,” when “he struck his knee against the dashboard.” This doctor was still treating plaintiff for the alleged knee injury at the time of the trial in the District Court. This is typical of the testimony of this doctor, who has appeared as a witness in many cases coming before the District Courts and this Court on appeal. We do not recall a case in which he testified that he was not still treating the patient at the time of the trial, regardless of the time which had elapsed since the accident.
On the other hand, Dr. Rufus H. All-dridge, the orthopedic specialist who examined plaintiff on behalf of defendant on February 17, 1967, testified as to certain statements which plaintiff reported to him —that his left knee struck something in the front when he was thrown forward; that he went to a doctor, did not work for a week, returned and worked two weeks, quit, went to the doctor again, did not again work for his former employer, but started working as a carpenter some time after that; that he was sent to the specialist, Dr. Sala-tich, in November; had been going to him ever since, and was going about twice a week. Dr. Alldredge stated that from his thorough and complete examination of plaintiff and the X-rays he found nothing *846 abnormal whatever, and that his knee required no treatment.
Our conclusion is that plaintiff has completely failed to show that he was injured as the result of any accident, or in fact, that he is actually disabled.
The judgment appealed from is affirmed.
Affirmed.