CULPEPPER, Judge.
Plaintiffs are the parents of Patrick Ortego, an 18 year old minor, who was killed when the vehicle which he was driving struck a school bus. The defendants are Hollis Plumbar, driver of the bus, and his insurer, American Motorist Insurance Company. From an adverse judgment, defendants appealed. Plaintiffs answered the appeal, seeking an increase in the award.
Plaintiffs contend the accident was caused solely by the negligence of the school bus driver in turning left at an intersection when the approaching Ortego vehicle was too close for safety. Defendants alleged the bus driver was free of negligence and, alternatively, that young Ortego was contributorily negligent in traveling at an excessive speed and not keeping a proper lookout.
In a written opinion, the district judge has correctly found the facts to be as follows:
“1) In the vicinity where the accident occurred, Louisiana Highway 182, a two laned, paved highway, runs generally north and south. The south-bound lane is intersected by Louisiana Highway 178, a two laned, blacktopped highway which runs northwesterly therefrom, forming a slanted T intersection.
“2) The intersection of the two highways is widened on Louisiana 178 by a blacktopped apron extending from the northwest and southeast bound lanes of Louisiana 178 and joining the southbound lane of Louisiana 182.
“3) Immediately prior to the accident under consideration, Patrick Ortego was driving his father’s 1963 Chrysler automobile in a southerly direction on Louisiana 182 north of the Louisiana 178 intersection; Hollis Plumbar was driving a school bus in a northerly direction on Louisiana 182.
“4) A distance of approximately \}/z blocks south of the intersection, a pickup truck, otherwise unidentified, traveling in a northerly direction on Louisiana 182, passed the school bus.
*378 “5) When some 100 to 150 yards south of the intersection Plumbar activated his left turn signals indicating his intention to turn onto Louisiana 178; two red blinking lights on the top front of the bus were also turned on. The bus moved slowly as it approached the intersection; stop signs on the bus were not exposed as no passengers were to be discharged from the bus at the intersection.
“6) Reaching a point on Louisiana 182 approximately even with the extreme south corner of the intersection, Plum-bar stopped momentarily, then began an angular turn across Louisiana 182 to Louisiana 178. In making this turn, the bus did not exceed 5 miles per hour.
“7) Prior to making his turn, Plumbar’s view of 182 was unobscured, the road ahead was straight for some i/£ mile north of the intersection.
“8) As Plumbar negotiated his turn, the front of the bus collided with the driver’s side of the Chrysler on the southwest corner of Louisiana 178 approximately 8i/¿ feet west of the south bound lane of 182. The vehicles moved slightly south after impact, but the vehicles remained in contact.
“9) At the time of impact, a small part of the rear of the bus protruded into the north bound lane of Louisiana 182. The south bound lane was completely blocked by the bus.
“10) Mr. Plumbar did not see the Or-tego vehicle until it was approximately 25 feet away from the bus.
“11) Skid marks left by the Chrysler measured 191 feet. They began in Louisiana 182 in the south-bound lane and angled into the intersecting apron. The first 1/2 of the skid marks reflected skips of 8-10 inches, thereafter, they formed two continuous lines to the point of the impact.
“12) Though the apron area was covered with pea gravel, there is no testimony of any sliding of the Chrysler, nor of any tire marks from point of impact to where the vehicles came to rest.
“13) There were no eye witnesses to the speed of the Ortego vehicle save and except some of the bus occupants who noticed the approaching car immediately before the collision and who said that it was coming upon the bus at a fast rate of speed. Testimony of one witness that the car spun before straightening out is impeached by the physical facts— the straight imprint of the skid marks to the point of the impact.
“14) Dr. Wayne Paul Wallace, an expert in the field of Civil Engineering, in reconstructing the accident estimated the speed of the Ortego car at the time the brakes were applied to be 73.4 miles per hour.”
Under these facts, the district judge decided the bus driver was negligent. As to the contributory negligence of the Ortego youth, the judge concluded “The evidence is not convincing that his speed was such as to have been a proximate cause of the accident.”
We will pretermit the question of the bus driver’s negligence. For, even assuming such negligence, we think the evidence clearly shows that young Ortego was driving at a speed of between 70 and 80 miles per hour and this excessive speed was a legal cause of the accident.
Defendants’ expert witness, Dr. Wayne Paul Wallace, holds the B.A., M.A., and Ph.D. degrees in engineering, is presently the Dean of the College of Engineering at Southwestern University in Louisiana, and has had both formal training and practical experience in accident reconstruction. We find his testimony is logical and supported by the physical evidence.
Dr. Wallace started with the known fact that Ortego left skidmarks for a distance of 191 feet to the point of impact. The evidence shows that 3 weeks before the accident new tires were installed on the *379 Chrysler automobile being driven by Orte-go. All except the last few feet were on the concrete surface of Highway 182, which at the time was dry. Thus, the braking conditions were good. Plaintiffs’ contention that pea gravel on the apron at the intersection was responsible for the great length of the skidmarks' is discredited by the testimony of Dr. Wallace who said that this had little to do with the skid, and by the physical fact that only the last few feet of the skid was in the area where pea gravel was present.
Dr. Wallace testified that the average vehicle with good brakes and on dry pavement requires about 180 feet of braking distance to come to a complete stop at 60 miles per hour. Ortego was not able to stop in a braking distance of 191 feet. Furthermore, after leaving these skidmarks the Ortego vehicle struck the school bus at a substantial speed. Pictures in evidence show the great amount of damage to the Chrysler automobile. The entire left side is caved in at the driver’s seat and the vehicle is a total loss. These pictures amply support Dr. Wallace’s estimate that Ortego was going between 30 and 40 miles per hour at the time of impact.
We think the physical facts fully confirm Dr. Wallace’s opinion that the Ortego automobile was traveling between 70 and 80 miles per hour. The legal speed limit on Highway 182 is 60 miles per hour. Thus, the Ortego youth was traveling between 10 and 20 miles in excess of the legal limit.
Plaintiffs argue that even if Orte-go was exceeding the speed limit, this was not a cause in fact of the accident. We cannot agree. Ortego had a clear view for at least one-half mile as he approached the intersection. This large yellow school bus had stopped with its left-turn blinker lights operating and then proceeded to make a left turn. Ortego saw or should have seen the school bus as it commenced its left turn. In our view, the most plausible explanation is that Ortego saw the bus turn but was simply going too fast to avoid the accident. If he had been traveling at the legal speed of 60 miles per hour, there would have been ample time for him to avoid striking the bus.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment in favor of the defendants and against the plaintiffs rejecting their demands at their costs. All costs of this appeal are assessed against the plaintiffs.
Reversed and rendered.