MILLER, Judge.
The jury awarded damages on a finding that defendant’s insured motorist negligently turned left after the oncoming plaintiff motorist pre-empted the intersection. The record supports this finding.
*918 The tutrix of Katherine Carr seeks damages for the personal injuries suffered by her minor daughter, herein referred to as plaintiff.
At about 5:15 p. m. on January 27, 1968, the northbound plaintiff had a green light to proceed into the intersection of Union Street and Cresswell Lane in the City of Opelousas. The north south Union Street is paved to a width of only 18 feet. The southbound insured defendant driver also had a green light and signaled his left turn with his flashing turn indicator. Defendant’s insured did not see the oncoming northbound vehicle and assumed, without checking to see, that his left turn was protected with a green arrow facing southbound traffic and a red light holding back northbound traffic.
The traffic signal was set so that when northbound traffic received the green signal, the left turn arrow which shows for 9 to 10 seconds and which protects left turning southbound motorists, changes to indicate that the left turn is no longer protected. After the green arrow is extinguished, the green light allowing southbound traffic to continue straight south stays on for an additional 30 seconds.
Defendant’s insured had stopped behind two other southbound vehicles. When the green arrow and green lights appeared for southbound traffic, the lead car turned left, the second car proceeded straight and defendant’s insured slowly moved forward. As he reached the intersection he hesitated, then made the left turn and was immediately struck.
Plaintiff was driving north at a speed of 30 mph in a 35 mph zone and the traffic signal turned green for northbound traffic when she was approximately 180 feet from the intersection. There was no northbound traffic between her vehicle and the traffic signal. When plaintiff saw defendant’s insured hesitate or stop in his proper southbound lane, she concluded that the southbound motorist recognized her right-of-way and plaintiff continued into the intersection. The left turn was commenced just as plaintiff reached the intersection. The left front of plaintiff’s Edsel struck the right front corner of defendant’s insured Pontiac when it had crossed from one to four feet into the northbound traffic lane.
The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely. Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295 (1957). Defendant’s insured failed to observe this law.
Defendant appellant contends that the facts of this case are similar to those found in Potts v. United States Fidelity and Guaranty Company, 135 So.2d 77 (La.App.2d Cir. 1961) and Ortego v. Plumbar, 238 So.2d 376 (La.App.3d Cir. 1970). These cases are distinguished on the facts.
Appellant here contends that the northbound plaintiff saw that defendant’s insured was making the left turn at the same time that she saw his left turn signal, and that this occurred when she was some 180 feet from the intersection. The evidence does not support this argument. On the contrary, the evidence preponderates that defendant’s insured hesitated or stopped before starting the left turn, which indicated that he was yielding to plaintiff’s right-of-way, and that the turn was not commenced until plaintiff reached the intersection. Defendant’s insured did not see plaintiff until a moment before impact. He did not know whether or not the green arrow was on when he made his left turn. He only assumed that it was.
Appellant contends that the jury’s award of $30,000 is manifestly excessive and should be reduced to $8,000. The award is high. Nevertheless, the award cannot be reduced unless an examination of the facts reveals a clear abuse of the discretion vested in the trial judge or jury. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
*919 At the time of the accident, Katherine Carr was 16 years old and was a junior in high school. She was one of the best students scholastically and in extra-curricular school activities. As a result of the accident, she was hospitalized for six days. She missed two or three weeks of school, but was able to keep up with all school work as well as extra curricular activities. Her grades did not suffer, and even improved during her senior year. Among awards earned after the accident were “hardest worker”, and “pacesetter”. She received the American Legion Award and was awarded an art scholarship from the Woman’s Club. She sang in a production called “Cajan Capers” and was a singing member of the Yamettes during both her junior and senior years. She did not miss any of the numerous Yamette performances and trips. In June or July of 1968, Katherine spent 5 days on the LSU-Baton Rouge campus taking a leadership training course. She was editor of the school annual. At the time of trial, plaintiff was a student at the University of Southwestern.
Three of Katherine’s four lower front teeth were knocked out in the accident. The fourth was loose, but the dentists attempted to save it. About 14 months later, it too had to be removed. She suffered lacerations in the mouth, one cut through the lip (no sutures) and bruises to her face, chest, trunk and legs. She suffered a fractured mandible in the area of the missing teeth. The mandible was fractured anterior to posterior, not superior to inferior. Wiring of the mandible was not required. She also suffered a myo-fascial ligamentous strain or sprain of the neck causing muscle spasm and pain complaints. Traction and/or neck braces were not used.
She developed traumatic pleurisy which was quickly cured. She had crying spells and depression over the loss of teeth. She was placed on a baby food diet for some six or seven weeks.
Excepting for her dental treatment and some minor plastic surgery, plaintiff has not been treated by any physician since March 30, 1968.
Dr. Emile Ventre, physician of Ope-lousas, treated Katherine during her six day stay in the hospital. He opined that her teeth and facial injuries were the most serious and that she had no symptoms of a whiplash injury. He noted that she was in bed during his treatment and that neck complaints might not show up during bed rest.
Following discharge from the hospital, Katherine was under the care of Dr. D. J. deBlanc, physician of Opelousas. He used Chymar injections for her hematomas; antibiotics to prevent infection; codine for cough and headaches and for pain in the neck and chest; and papase to remove edema. He found muscle spasm, and diathermy treatments were given from February 3 to March 30, 1968. Dr. deBlanc has not treated plaintiff since March 30, 1968. On June 6, 1968, he discharged Katherine, but stated that he would follow her as a friend. He referred Katherine to Dr. Blaise Salatich, orthopedic surgeon of New Orleans, but never received a report from him. Dr. deBlanc found no permanent disability as of 3 or 4 months post accident (Tr. 482), but admits that Katherine was not well as of June 6, 1968.
On June 20, 1968, Dr. Tom D. Cronin, plastic surgeon of Houston, Texas, repaired a three milimeter by one milimeter pigmented scar on Katherine’s lower lip. This 30 to 40 minute procedure was performed under local anesthesia at a cost of $70 excluding hospital charges. A good result was obtained. The dentists who treated Katherine in 1969 did not notice any blemish.
Katherine’s dental treatment by Dr. Toler of Opelousas was difficult and prolonged. She had two temporary bridges, and two permanent bridges before • an acceptable bridge (the third permanent one) was inserted in June of 1968. Katherine spent *920 many days in the dental chair. Anesthesia was used while many impressions were taken. All dentists agreed that she was cooperative but apprehensive and that her apprehension was justified. It was generally agreed that the third bridge left something to be desired, both aesthetically and functionally.
On March 13, 1969, Katherine was treated by Dr. Raymond P. Bassich, Jr., dentist of New Orleans. He performed root canal therapy on Katherine’s right central lower incisor which had been damaged in the accident. After taking bacteriological tests, he did a frenotomy.
Notwithstanding the excellent work by Dr. Bassich, the remaining lower incisor had to be removed in March of 1969. This tooth was removed and a new bridge was made and inserted by Dr. Francis Horaist of Houston, Texas. This bridge dramatically improved plaintiff’s condition.
Dr. Blaise Salatich saw Katherine on October 17, 1968 and again on June 3, 1970, just before trial. He verified all of Katherine’s complaints (loss of grip, tiredness on writing, overall tenderness in her arms, numbness, headaches and loss of memory) and found nerve root damage, a tearing of the ligamentous and capsule structure of the cervical vertebrae; marked tenderness over the sub-occipital area and other areas; a tearing or stretching of soft parts of ligaments, capsule, muscle attachments around the temporo mandibular joints; stretched or torn ligaments between C-2 and C-3, C-3 and C-4 and C-4 and C-5. In his opinion these conditions were permanent, and the only treatment would be pain medication. Dr. Salatich did not prescribe medication, and did not report his findings to Dr. deBlanc or to anyone. Tr. 410.
In challenging Dr. Salatich's qualifications defendant established that the Doctor failed Part II of the American Board of Orthopedic Surgery and that he was not permitted to take the examination a second time. It was established that Dr. Salatich has not performed orthopedic surgery in the last 4 years and that since 1959, he has only performed about a dozen operations. Dr. Salatich explained that he had an accident in 1959 and suffered a neck injury which has disabled him since that date. Tr. 359. Dr. Salatich admitted that since 1960 he has testified about 24 times each year and that he has been called by the plaintiff in all these cases. Tr. 404, 405.
While defendant was traversing Dr. Salatich concerning his qualifications, the trial court would not permit plaintiff to confront Dr. Salatich with statements in three Court of Appeal opinions (Porter v. Summers Interstate Electric Company, 205 So.2d 844; Herbert v. American General Insurance Company, 150 So.2d 627; and Barrere v. Commercial Union Insurance Group, 195 So.2d 461) and one from the United States District Court opinion (Noble Drilling Corporation v. Donovan, 266 F.Supp. 917). Defendant offered these opinions in a proffer of proof. Plaintiff’s counsel submitted that he was entitled to rebut with a proffer of proof. In that connection, he subpoenaed the author of each of the above opinions, together with the entire record of each case. The trial judge refused to order these subpoenaes issued since the cited cases were not presented to the jury.
Defendant-appellant argues that the trial court erred. We find that the trial court properly excluded the cases and any excerpts therefrom. An appellate or trial court’s conclusion as to Dr. Salatich’s fairness and competence must be based on the testimony in the record presented in that case. The facts developed in any case are available for presentation in other cases. But the appellate or trial court’s opinion based on those facts is not admissible in other cases.
It is apparent that the jury was impressed with Dr. Salatich’s testimony. We are not. The fact that he did not report his *921 serious findings to anyone, not even to the referring physician, substantially reduces the probative value of his opinions. The record does not suggest why Dr. Salatich was not asked to treat Katherine. It is difficult to understand how a person with such serious disabilities in October 1968 and June 1970 would not seek treatment. Furthermore, plaintiff’s witness Becky Billeaudeau testified that she was one of Katherine’s best friends and that she didn’t find that the accident changed Katherine’s activities. Tr. 416. Katherine’s mother and father were not called to testify. The record does not substantiate Katherine’s numerous subjective complaints concerning permanent disability resulting from her whiplash injury.
In addition to the numerous physicians and dentists who testified, Katherine was seen by two dentists, a plastic surgeon, a throat Doctor, and a radiologist who were not called to testify. Plaintiff shows that these witnesses were subpoenaed and contends that nothing more could be done to remove the presumption that the testimony of these witnesses would be adverse to plaintiff. However, there is no showing that plaintiff called these witnesses at the trial. Since Katherine sought treatment or consultation from all these physicians and dentists, a presumption that their testimony would be unfavorable to plaintiff arises. The trial court properly instructed the jury that:
“The unexplained failure of a litigant to call a witness who possesses peculiar knowledge essential to that party’s cause, which witness is available to him and is under his control, raises a presumption that the witness’ testimony would be detrimental to the party’s cause.”
Hay v. Sears, Roebuck & Company, 224 So.2d 496 at 501 (La.App.3d Cir. 1969).
An award of $1,000 adequately compensates Katherine for the injuries and damages sustained to her neck and spine.
An award of $17,500 adequately compensates Katherine for the loss related to the loss of four teeth, the injury to the temporo mandibular joint and for her facial damage. This young lady suffered an unusual amount of pain and embarrassment related to her extensive dental treatment. Before the accident she had some promise as a singer. It was established that the loss of her lower front teeth adversely affects her future in this field.
The award on Katherine’s behalf is reduced from $30,000 to the sum of $18,500, and as amended, it is affirmed. Costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.