484 So.2d 155 (1986)
Alvin J. and Jane DESHOTEL, Plaintiffs-Appellants,
v.
SOUTH LOUISIANA CONTRACTORS, INC. and Insurance Company of North America, Defendants-Appellees.
No. 84-1057.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Rehearing Denied March 13, 1986.
*156 John W. Johnson of Clanton & Johnson, and Young & Burson, Terrance Hoychick, Eunice, for plaintiffs-appellants.
Onebane & Associates, Robert M. Mahony, Lafayette, for defendants-appellees.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
Alvin and Jane Deshotel were injured when a truck trailer struck their pickup truck from the rear at the intersection of Louisiana Highways 26 and 190 in Jefferson Davis Parish. The truck trailer was owned by South Louisiana Contractors, Inc., and was driven by its employee. The Deshotels sued South Louisiana Contractors and its insurer, Insurance Company of North America, for damages allegedly caused in the accident.
The trial court found that the accident was caused solely by the fault of South Louisiana Contractors, and awarded the plaintiffs the following sums:

 ALVIN DESHOTEL
Pain, suffering and permanent
 disability $80,000.00
Medical expenses 2,012.95
Drug bills 1,908.00
Wage loss (past and future) 125,000.00
 ___________
 $208,920.95
 JANE DESHOTEL
Pain, suffering and permanent
 disability $20,000.00
Medical expenses 4,187.40
Drug bills 1,018.20
 __________
 $25,205.60

The liability of the defendants is not contested on appeal. Plaintiffs and defendants assign as error the trial judge's damage awards. The Deshotels also argue that they should have been allowed to amend their petition at trial to increase their claim for loss of earnings from $300,000 to $500,000. The trial court only awarded $125,000. The amendment issue is an issue in this case because we find that an increase is warranted in that portion of the award beyond the $300,000 wage loss originally prayed for.

GENERAL DAMAGES
It is well settled that we may not disturb a damage award absent an abuse of discretion by the trier of fact in making the award. We find sufficient basis for the general damage awards; therefore, we affirm them.
The trial judge awarded Alvin Deshotel $80,000 for pain, suffering and permanent disability, and he awarded Mrs. Deshotel $20,000 for similar damages. In its written reasons for judgment the trial court stated the following relative to the general damages of the Deshotels:
*157 "There is no evidence proving that Mr. Deshotel had experienced or complained of any back or neck pain prior to the automobile accident on June 15, 1981. While Mrs. Deshotel suffered from a pre-existing degenerative disc disease, her condition was asymptomatic prior to the accident and symptomatic afterward. Evidence and testimony at trial given by various doctors showed that Mr. Deshotel's condition and injuries and Mrs. Deshotel's worsened condition and injuries were caused by the accident in which their car was struck by the tractor-trailer owned and operated by South Louisiana Contractors, Inc.
"The testimony and evidence supplied by the various doctors involved in this case was contradictory and conflicting particularly as to the extent of the Deshotel's [sic] injuries, permanent disability, and the ability of Mr. Deshotel to continue his former work or find another job he is physically able to perform. From this evidence it is clear that Mr. and Mrs. Deshotel have both suffered severe physical injuries to their respective backs and necks resulting in intense pain and suffering. Based upon the myelogram and discogram performed upon Mr. Deshotel, he suffers from one ruptured disc in his lower back and two bulging discs in his neck which cause him extreme pain. Mr. Deshotel worked with this pain for 1½ years and has not had surgery to attempt to alleviate this pain, so the pain must not be so severe that Mr. Deshotel cannot cope with it. Mr. Deshotel has proven by a preponderance of the evidence that he suffers from two bulging discs in the cervical area and one ruptured disc in the lumbar area caused by the accident in question and causing Mr. Deshotel to endure some pain and suffering. No doctor has recommended any surgery at this time and it is uncertain what good if any these surgical procedures would accomplish.
"Mrs. Deshotel suffered from a pre-existing degenerative condition in her neck area. After the accident, Mrs. Deshotel suffered from one bulging disc and one ruptured disc. The testimony was conflicting, but it is clear Mrs. Deshotel suffered physical injuries resulting in pain and suffering. The damages claimed by the Deshotels' [sic] for the surgical operations they may need to go through are too speculative to be compensable. There is no evidence that these operations will ever be performed or be absolutely necessary."
On the basis of the findings quoted above we cannot conclude that the trial court abused its "much discretion" in setting the general damage awards at $80,000 and $20,000. We do not necessarily agree with the trial judge's conclusions that, because Mr. Deshotel worked for one and one-half years in pain after the accident without seeking relief through surgery, the "pain must not be so severe that Mr. Deshotel cannot cope with it." Mr. Deshotel's pain appears to have grown progressively and ultimately forced him to give up his employment.
Possibly the awards may be lesser or greater, as the case may be, than what we might have awarded, nevertheless we find no basis under appellate standards of quantum review to disturb the awards.
The appellants argue that Mr. Deshotel should have been awarded damages for permanent disability as an item separate and distinct from pain and suffering. We find no requirement for a break down of general damages into separate items.

LOST WAGES
The appellants argue that the trial court's award of $125,000 for past and future wage loss is inadequate. The calculations at trial by two economists, Mr. Don Cornwell and Dr. Stuart Wood, differed sharply, due in part to Dr. Wood's consideration of disability benefits paid by Deshotel's former employer. We agree that these benefits cannot be a basis for a diminution of Deshotel's recovery under the collateral source rule. Hawthorne v. Southeastern Fidelity Ins. Co., 387 So.2d 26 (La.App.3d Cir.1980); Taft v. Gist, 293 *158 So.2d 641 (La.App.3d Cir.1974). However, as this court stated in Smith v. Lumbermen's Mut. Cas. Co., 414 So.2d 1281 (La. App.3d Cir.1982), writ denied, 417 So.2d 367 (La.1982), at page 1283, "[t]he trial judge is not bound by expert testimony but may weigh the testimony of expert witnesses in the same manner as he would any other evidence. [Citations omitted] The trial court's assessment of the weight and credibility to be given expert testimony will not be disturbed unless found to be clearly erroneous."
According to Mr. Cornwell, plaintiff's expert economist, Alvin Deshotel was 48.8 years old at the time of this accident and he had a work life expectancy of 61.9 years. Mr. Cornwell made his economic loss projection from the last day of Alvin Deshotel's employment with Western Gear Corporation, December 31, 1982. Mr. Cornwell stated that if Deshotel held employment at minimum wage, his total economic loss would be $421,273.20, of which $68,278.73 represented past loss. Dr. Wood testified that past loss was $48,302.94. His figures for future loss ranged from $171,000 to $235,000, depending on the growth rate. The judge was evidently more persuaded by Dr. Wood's calculations, which he adjusted to reflect the income he was convinced Deshotel will earn from future employment at a lower wage.
Our review of the two economists' testimony convinces us that the opinion of Mr. Cornwell is more reasonable than that of Dr. Wood. It will be noted, however, that the trial court made no reference to the economists' testimony in its reasons for judgment. The trial court pegged Mr. Deshotel's economic loss at $125,000 without explanation other than that the court was of the opinion that Deshotel "is able to perform some type of gainful employment." The trial court's reasons on this point read as follows:
"The testimony as to Mr. Deshotel's ability to return to his former employment or some other employment was also conflicting. Most of the testimony was to the effect that Mr. Deshotel would never be able to return to his former employment, but is [sic] is clear that he is able to perform some type of gainful employment even though this may result in a lower salary and a loss of fringe benefits that his former employment provided. This Court is unconvinced that Mr. Deshotel will never be able to return to any type of gainful employment."
The trial court evidently gave no credence to the testimony of Dr. James McDaniel who was of the opinion that Deshotel was not disabled and could return to his former employment. We agree that Dr. McDaniel's opinion should be disregarded. The other medical testimony was contrary to that of Dr. McDaniel, and further, did not establish that Deshotel could do any other kind of work. Each party called vocational or vocational rehabilitation experts to testify. Defendants' expert thought Deshotel could do certain types of work but in fact found no jobs available in the categories he thought Deshotel would fit in except two sales jobs in insurance. Deshotel is a mechanic or machinist. There is no evidence to convince us that he has skills that would enable him to do sales work.
Plaintiffs' expert expressed the opinion that in his present condition without surgery, Deshotel could not return to his former employment as a field service representative for Western Gear Corporation. There is no certainty that surgery would permit Deshotel to return to this work. The fact that Deshotel worked for one and one-half years before ceasing to work as a full service representative does not establish that he could do that work. The trial court explicitly found this to be so as shown by the quotation set forth above. However, we are of the opinion that the trial court abused its discretion and was clearly wrong in picking out of the air, so to speak, a figure of $125,000 as an economic loss based on the conclusion that he could do some kind of work.

SHOULD PLAINTIFFS HAVE BEEN ALLOWED TO AMEND THEIR PETITION AT TRIAL?
Plaintiffs filed their petition on May 25, 1982 and asserted no economic loss for *159 Alvin Deshotel. On February 10, 1983 plaintiffs amended their petition to allege among other things a wage loss on the part of Alvin Deshotel of $300,000. Trial of the case began on July 18, 1984. That day plaintiffs moved orally to amend the petition with leave to submit further amendment to raise the figure to $500,000. Counsel for defendants objected, and the trial court refused to allow the amendment. Counsel for defendants claimed his clients would be prejudiced by allowance of the amendment. The trial court did not expatiate on his reason for denial of permission to amend. The trial judge stated: "I think it would be taking unfair advantage of the Defendant [sic] at this time to amend those pleadings. We're in the afternoon of the first day of trial and I think it comes too late."
The objection made on behalf of defendants at the time of the request to allow amendment does not express anything which we can view as prejudice. In its amending petition of February 10, 1984, plaintiffs claimed itemized damages totaling $955,700.35. No question of insurance coverage was ever raised by defendants. Defendants were furnished far in advance of trial with information that plaintiffs would offer evidence or testimony to support an economic loss for Alvin Deshotel which was well above $300,000. We are unable to identify any particular prejudice.
Article 1154 of the Code of Civil Procedure provides:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
Under the liberal rule expressed in this article of the Code of Civil Procedure we think the amendment should have been allowed. Allowance of the amendment would have expanded the economic loss from $300,000 to cover proof of $421,273.20. We do not regard such an expansion as unduly prejudicial under the circumstances of this case. Plaintiffs' economist was allowed to give his expert opinion testimony, subject to the objections to the amendment of the pleadings. Thus, the evidence supporting the economic loss of $421,273.20 is in the record. Under the circumstances we will amend the judgment to award Alvin Deshotel an economic loss of $421,273.20 instead of $125,000.
For the reasons given above we amend the judgment in favor of plaintiffs with the amendment just mentioned so as to increase the award in favor of plaintiffs by the sum of $296,273.20 so as to award him a total of economic loss of $421,273.20. In all other respects the judgment in favor of plaintiffs is affirmed.
The costs of this appeal are assessed equally between plaintiffs and defendants.
AMENDMENT AND AFFIRMED AS AMENDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
The defendants, South Louisiana Contractors, Inc. and Insurance Company of North America, filed an application for rehearing in this case and make two complaints relative to the decision rendered by us. Both concern the economic loss which we increased from $125,000 awarded by the trial court to $421,273.20. The first complaint, made in two parts, is that any increase *160 is manifestly erroneous because the evidence supports the trial court's award, but in any event our award is excessive and we failed to comply with appellate standards of review in altering the award. The second complaint is that we were not justified in making an award in excess of the amount pleaded, despite defendants' timely objection to enlargment of the pleadings through admission of testimony or evidence showing a loss above the $300,000 pleaded.
Defendants' application for rehearing is denied.
Although we deny the application, we find merit in defendants' complaint that we erred in increasing the award for economic loss beyond $300,000. We focused on the attempt of plaintiffs' counsel to cure the pleading deficiency by the request at trial to be allowed to amend the petition to raise the amount demanded. We found that the amendment should have been allowed under the very liberal rule and injunction set forth in Article 1154 of the Louisiana Code of Civil Procedure.
Upon reconsideration we conclude that the liberal provisions of Article 1154 have not been applied to situations relating to quantum demands set forth in pleadings. On the contrary, the jurisprudence imposes a rigid standard. It is our conclusion that an attempt to amend a petition under circumstances such as presented in this case at the time of trial comes too late. The jurisprudential rule rather than Article 1154 governs.
The jurisprudential rule was recently reiterated by us in Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3d Cir.1985):
"Items of special damages must be specifically alleged. LSA-C.C.P. Art. 861; Lanier Business Products, Inc. v. 1st Nat'l Bank of Rayville, 388 So.2d 442 (La.App. 2d Cir.1980). The general rule is that a litigant can not recover an amount greater than that for which he prayed in his petition. Smith v. Moncrief, 421 So.2d 1127 (La.App. 3rd Cir. 1982), writ denied, 426 So.2d 177 (La. 1983). The sole exception to this rule involves situations when otherwise inadmissible evidence of special damages is admitted without objection and the pleadings are enlarged to that extent. LSA-C.C.P. Art. 1154; Ehrhardt v. Cummins, 369 So.2d 213 (La.App. 3rd Cir. 1979), writ denied, 369 So.2d 1366."
Although the Freeman case did not focus on an attempt to amend at the time of trial, we are of the opinion that the rule applies despite an attempt or offer to amend.
For the foregoing reasons, we amend the judgment rendered by us to reduce Alvin Deshotel's award for economic loss by the sum of $121,273.20 so as to reduce the amount to $300,000.
APPLICATION FOR REHEARING DENIED.