542 So.2d 68 (1989)
Laura J. REESE, Plaintiff-Appellee,
v.
WINN-DIXIE OF LOUISIANA, INC., Defendant-Appellant.
No. 87-1085.
Court of Appeal of Louisiana, Third Circuit.
April 5, 1989.
Rehearing Denied May 4, 1989.
Writs Denied June 30, 1989.
*69 Preston N. Aucoin, Ville Platte, for plaintiff-appellee.
Brinkhaus, Dauzat, Falgoust & Caviness, Jerry J. Falgoust, Opelousas, for defendant-appellant.
Before GUIDRY, KNOLL and KING, JJ.
KNOLL, Judge.
In this slip-fall appeal we address the propriety of plaintiff's counsel referring to an unrelated decision of this court in attempting to discredit a medical expert witness on cross-examination; and, whether the jury's damage award was tainted by references in rebuttal closing argument by plaintiff's counsel to the appellate decision and a damage award made by a jury in a similar, but unrelated case in another division of the same district court.
Winn-Dixie of Louisiana, Inc. (hereafter Winn-Dixie) appeals the judgment of the jury which awarded $90,300 to Laura J. Reese for injuries she received when she slipped and fell on grapes in Winn-Dixie's store in Ville Platte, Louisiana. Winn-Dixie contends that the trial court committed manifest error in: (1) allowing counsel for Mrs. Reese to cross-examine Dr. James McDaniel, Winn-Dixie's expert orthopedist, using Deshotel v. South La. Contractors, Inc., 484 So.2d 155 (La.App. 3rd. Cir.1986), writ denied, 493 So.2d 635 (La.1986), an appellate decision which mentioned Dr. McDaniel in its quantum analysis; (2) allowing counsel for Mrs. Reese to refer to the Deshotel case in his rebuttal closing *70 argument; (3) allowing counsel for Mrs. Reese to refer in his rebuttal closing argument to a quantum award made by a different jury to a different plaintiff in a slip-fall case in another division of the same district court; and, (4) in the alternative, that the jury's damage award is excessive.
Although through its assignments of error, Winn-Dixie seeks either a reversal of the jury verdict and a new trial or, in the alternative, a reduction in the quantum award, nowhere does it contest liability for the accident. Accordingly, our analysis will focus on the evidentiary questions presented, their affect on the damage award, and whether we should order a new trial on the issue of damages.

FACTS
On the morning of April 14, 1986, Mrs. Reese, accompanied by her daughter-in-law, Lisa Merritt, consulted Dr. Tyler Kent in Opelousas, Louisiana for examination after having two partial mastectomies. At that visit, Dr. Kent discharged Mrs. Reese from his care, and gave his approval for her to return to her job as a first grade school teacher.
On the way home from Dr. Kent's office, Mrs. Reese and Mrs. Merritt stopped at the Winn-Dixie store in Ville Platte. Upon entering the store, Mrs. Merritt got a shopping cart and began pushing it through the store, walking a few feet ahead of Mrs. Reese. As they approached the meat counter, which is located in the back of the store and runs perpendicular to the dry food aisles, Mrs. Merritt heard Mrs. Reese exclaim, "Lisa, I fell." Mrs. Merritt turned around and saw her mother-in-law lying on her back with her leg twisted behind her, whereupon Mrs. Merritt assisted Mrs. Reese in getting up.
Mrs. Reese and Mrs. Merritt immediately reported the accident to Deborah Soileau, a Winn-Dixie store clerk who was stocking merchandise one or two aisles away. Mrs. Soileau then told Michael Griffith, a stock clerk, about the accident, and directed him to clean the floor. Mrs. Reese and Mrs. Merritt also reported the accident to Earl Frank, a Winn-Dixie assistant manager. After an accident report was prepared, Mrs. Reese and Mrs. Merritt paid for their groceries and proceeded home.
The next morning Mrs. Reese experienced severe back pain, and was unable to get out of bed. That day Mrs. Reese saw Dr. John Tassin, a general practitioner, for low back tenderness, leg pain, and pain in the right shoulder. Dr. Tassin prescribed medication and physical therapy, and advised Mrs. Reese to delay her return to teaching. Two days later Mrs. Reese attempted to charge Winn-Dixie for her medicine. Winn-Dixie refused payment and this suit immediately followed on April 17, 1986.

CROSS-EXAMINATION
Winn-Dixie contends that the trial court committed manifest error in allowing plaintiff's counsel to cross-examine Dr. James McDaniel in front of the jury, using a previously published appellate opinion commenting on Dr. McDaniel's testimony as an expert witness.
Dr. McDaniel is a board certified orthopedic surgeon in Lafayette, Louisiana. Upon motion of Winn-Dixie and under order of the court, he examined Mrs. Reese on one occasion for 20 to 25 minutes. Dr. McDaniel testified at trial as Winn-Dixie's medical expert and opined that Mrs. Reese did not exhibit any objective signs of a back injury, and that she was able to return to her job as a first grade teacher.
Referring to the Deshotel case, counsel for plaintiff cross-examined Dr. McDaniel, over Winn-Dixie's objection, about his findings regarding Mrs. Reese's injury and her ability to work, as follows:
"Q. Do you recall seeing a man named Alvin Deshotel?
A. Sure. You sent me a copy of that [appellate decision], uh, ...
Q. Yes.
A. ... to refresh my memory. I recall it very well.
Q. Youyou refreshed your memory as to what credence the Court gave to your testimony?
[Objection and argument of counsel.]
*71 Q. Uh, the last question, uh, Dr. McDaniel, uh, was, uh, if you were familiar with that case?
A. Vaguely.
Q. All right. That was your, uh, examination and your conclusion of the condition of Mr. Alvin Deshotel?
A. What was my conclusion?
Q. Your conclusion was, uh, that you were of the opinion [in the Deshotel case] that he was not disabled and could return to his former employment?
A. That is correct.
Q. All right, you, uh, I'd like for the record to show that Iand I'm restricting this to one question, Your Honor, uh, pursuant to your ruling, that in the reported case of Deshotel versus South Louisiana Contractors, Incorporated, 484 So.2d 153 [sic], Louisiana Appellate, Third Circuit, ... the Court stated, and you read it, did you not?
A. Yes.
Q. [Quoting from the Deshotel decision:] The trial court evidently gave no credence to the testimony of Dr. James McDaniel who was of the opinion that Deshotel was not disabled and could return to his former employment. We agree that Dr. McDaniel's opinion should be disregarded...."
Winn-Dixie's argument is that the Deshotel case was irrelevant to the case sub judice, and by using the statements of another tribunal, i.e., the appellate court, to determine whether or not Dr. McDaniel was believable, the introduction of such extraneous evidence stripped the jury of its function as the arbiters of credibility.
Citing Jackson v. Ed's Cab Company, 333 So.2d 701 (La.App. 4th Cir.1976), writ refused, 337 So.2d 877 (La.1976), plaintiff argues that the jurisprudence has determined that an expert witness may be cross-examined regarding previously published appellate decisions in order to show bias or partiality.
We find our decision in Carr v. Fidelity and Casualty Company of New York, 248 So.2d 917 (La.App. 3rd Cir.1971), dispositive of the issue. In Carr the trial court would not permit defense counsel to confront an expert medical witness in traversal on his qualifications with statements in earlier appellate court opinions. Judge Miller, speaking for this court, affirmed the trial court's ruling, and stated:
"We find that the trial court properly excluded the cases and any excerpts therefrom. An appellate or trial court's conclusion as to Dr. Salatich's fairness and competence must be based on the testimony in the record presented in that case. The facts developed in any case are available for presentation in other cases. But the appellate or trial court's opinion based on those facts is not admissible in other cases."
Furthermore, we have thoroughly reviewed Jackson and find it, too, does not support plaintiff's position. In Jackson, although the appellate court sanctioned the use of prior appellate decisions in cross-examination of that expert medical witness, it is clear that its decision hinged on the fact that the doctor's qualifications were questioned at trial and, by implication, the doctor's answers were evasive about those qualifications. At page 703 of its opinion, our brethren of the Fourth Circuit stated:
"It is a matter of common judicial knowledge that a number of appellate opinions have dealt with the alleged qualifications (or lack thereof) of this witness.
* * * * * *
It was not error (nor should it have been a surprise to plaintiff's counsel) for the trial court to permit defense counsel to cross-examine Dr. Salatich about his repeated failures to obtain board certification. Equivocation by Salatich on this important point could, properly, set the stage for referral to prior judicial pronouncements relative thereto." (Emphasis added.)
In the present case, the record shows that at no time were Dr. McDaniel's qualifications as an orthopedic surgeon called into question, and never did Dr. McDaniel equivocate about his credentials or lack thereof. The jury was made aware that Mrs. Reese was examined by Dr. McDaniel at the request of Winn-Dixie, that Dr. *72 McDaniel was not Mrs. Reese's treating physician, and that Winn-Dixie was responsible for his billing. Under these facts, plaintiff's use of the Deshotel case to discredit Dr. McDaniel's credibility was clearly erroneous. We find the trial court clearly erred in permitting the use of an appellate decision to attack the credibility of the witness.

CLOSING ARGUMENT
Likewise, we find that the trial court compounded its error when, based on its earlier evidentiary ruling, it allowed plaintiff's counsel, in rebuttal closing argument, to refer to Deshotel and another unreported jury award in a slip-fall case of another division of the same district court.
In referring to the Deshotel case during rebuttal closing argument, plaintiff's counsel stated:
"I know Dr. McDaniel. Ya'll know him. Ya'll heard what the Courts say about him ... [Dr. McDaniel] has become an insurance doctor who evaluates people for the purposes of giving depositions or coming to court to say that there's nothing wrong with them. The Courts in Louisiana are not crazy. You heard the decision, the Deshotel decision. This is what the Court of Appeal said. The Court of Appealnow this isthe Court of Appeal is one step higher than the court we're in over here. In that case, Judge Jimmy Stoker who lives in Alexandria found this. He said, `The trial court evidently gave no credence to the testimony of Dr. James McDaniel who was of the opinion that Deshotel was not disabled and could return to his former employment.' In other words, Judge Stoker is saying the trial judge did not believe McDaniel, and then he says, `We agree. We agree that Dr. McDaniel's opinion should be disregarded.' I sent Dr. McDaniel the decision for him to see. I guess he knew it already."
For reasons aforestated, it was clear error to allow the use of an appellate decision to attack the credibility of a witness in closing argument.
In referring to the jury award in another slip-fall case, plaintiff's counsel stated:
"And, you know, uh, not long ago, just across the hall inin Judge L.O. Fusilier's courtroom, we had identical trials. I had one for a man. He wasn't hurt as bad as Laura Reese. Thank goodness for that. So I wrote this on the board. Iand I told them fifty-six thousand dollars. I told the Jury, I said, `In my judgment, that's what, uh, I think he should get.' The Jury went out, and there was some people from Mamou and Ville Platte on that Jury, and fromand the rest of the parish too. I think all wards of the parish were there. Came back and they ...

OBJECTION: BY MR. FALGOUST, counsel for Defendant: Excuse me. Your honor, I am going to ...

CONTINUED BY MR AUCOIN: ... said eighty-two thousand dollars."
In Temple v. Liberty Mutual Insurance Company, 316 So.2d 783 (La.App. 1st Cir. 1975), modified (on other grounds), 330 So. 2d 891 (La.1976), the First Circuit stated at page 793:
"[I]n Luquette v. Bouillion, La. App., 184 So.2d 766, it was declared that the propriety of argument in a civil jury case must be determined in the light of the facts of the particular matter, the conduct and atmosphere of that particular trial and the arguments of opposing counsel ... [T]he court in Luquette, above, held great latitude is allowed in argument before a civil jury subject to regulation by the court whose duty it is to confine argument within proper bounds. Luquette also holds that unless the contrary is shown, rulings of a trial court relative to alleged improper argument are presumed to have been within the court's discretion in such matters. We agree with these pronouncements.
We amplify the foregoing by citing with approval the majority rule concerning inflammatory argument in a civil jury trial, as set forth in 88 C.J.S. Verbo Trial Sec. 187, pp. 371-373:

*73 `Inflammatory remarks made by counsel in argument which are calculated to appeal to the passions and prejudices of a jury are improper.

The parties to an action are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice, and counsel should confine his argument to the evidence in the case and to the inferences properly to be drawn therefrom, and should avoid appealing to the prejudice of the jury. Arguments and comments by counsel calculated to arouse the passions and prejudices of a jury by presenting to them considerations extraneous to the evidence are highly improper. The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law. When the language used is such as discloses a studied purpose to arouse the prejudices of the jury based on facts not in the case, the court cannot overlook it or consider that a party against whom such effort has been made has had a fair consideration of his case at the hands of the jury.'" (Emphasis added.)
Our studied review of the record discloses that the interjection of considerations of a damage award in another case in Evangeline Parish was totally extraneous to the evidence. Arguments and comments by counsel to a jury by presenting to them considerations extraneous to the evidence are highly improper and are calculated to arouse the jury's passion and prejudice. Temple, supra.
Therefore, we conclude that because of the improper cross-examination of a witness, and, improper closing argument by plaintiff's counsel, the jury's damage award reflected an appeal to passion and prejudice. Accordingly, in order for the ends of justice to be met, we will review the jury's damage award in accord with the proper evidence of record.[1]
Under the particular circumstances present in this case, we do not consider that our appellate review is subject to the constraints applicable in the ordinary review of quantum awards as set forth in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); and Reck v. Stevens 373 So.2d 498 (La.1979).
We note that the trial court admonished the jury that the argument of plaintiff's counsel was not evidence. Under the circumstances of this case, however, we deem such instruction inadequate to insure that Winn-Dixie had a fair and unbiased jury determination of damages. Id., at page 794.

QUANTUM
Mrs. Reese contends that she is entitled to awards for medical expenses, past and future, pain and suffering, past and future, shock, and for future disability. She does not claim any loss of wages.
At the time of the accident, Mrs. Reese was 46 years of age, and was an elementary school teacher in the Evangeline Parish schools for the past 22 years. After her fall, she retired from the Evangeline Parish school system. The record does not support that her fall caused her to retire. After retirement, she began teaching a reading course for Southern University in Evangeline Parish.
On the day following the accident Mrs. Reese consulted Dr. John Tassin, a general practitioner, with complaints of low back tenderness, right shoulder pain, and pain in the leg. After completing his examination, Dr. Tassin diagnosed Mrs. Reese's injury as a low back and right shoulder sprain, and treated her with perscriptive medication; he also ordered physical therapy. X-rays taken three days later showed no fractures or dislocations. He continued to treat her until February 6, 1987, a total of 12 office visits. Although her right shoulder *74 pain resolved itself quickly, she continued to suffer intermittent pain in the low back with associated leg numbness. At no time in the course of his treatment did Dr. Tassin find any objective signs of Mrs. Reese's complaints.
Dr. Tassin referred Mrs. Reese to Dr. Arthur B. Flick, an orthopedist, on August 12, 1986. On his first examination, Dr. Flick observed mild low back muscle spasms, and though Mrs. Reese complained of increased pain in the right leg, the straight leg raising test was negative for nerve root impingement. He continued conservative treatment of Mrs. Reese until June 25, 1987, and saw her 7 times. He opined that Mrs. Reese showed slow, steady progress, and that during the course of her treatment her complaints of pain were intermittent. On May 22, 1987, a MRI scan was conducted, and its results showed a suggestion of disc degeneration at L,3-4 and L,4-5, with no sciatic nerve impingement. Dr. Flick's final diagnosis was that Mrs. Reese suffered a mechanical muscle strain. He opined that as of October of 1986 he thought Mrs. Reese could be as active as she wanted to, including teaching. He did not restrict her activities, and stated that more probably than not, Mrs. Reese would not need surgery. When confronted at trial with the fact that Mrs. Reese had retired from teaching in the fall of 1986, Dr. Flick candidly admitted that he was surprised by this, and stated that Mrs. Reese's retirement was done without recommendation from him. Dr. Flick stated if Mrs. Reese had asked him to return to work, he would have released her at the end of November 1986. In summation of his last examination of Mrs. Reese on June 25, 1987, Dr. Flick stated:
"I think this is a lady who will, as time progresses over the next twelve months, and I'm using those time frames based upon watching her in the last nine months, gradually get better, who will have longer periods pain free, and who, in order to assist and aid in this, will have to become very diligent in her activities and exercise. I see no reason why she couldn't have the green light to go full speed ahead, and be as active as she wants, and work on as many exercises as possible."
Mrs. Reese also utilized the testimony of Jerry Chamberlain and Sandra Mullins, physical therapists who treated her under the direction of Dr. Tassin and Dr. Flick. Mr. Chamberlain gave Mrs. Reese physical therapy from April 18, 1986, through August 11, 1986. At the beginning of treatment he found Mrs. Reese had muscle tightness in the buttocks and reported that Mrs. Reese complained of low back tenderness. He opined that Mrs. Reese's condition improved in the course of physical therapy. Mrs. Mullins gave Mrs. Reese physical therapy from August 18, 1986, through October 8, 1986. She recommended a weight loss program for Mrs. Reese, who weighed approximately 259 pounds, in addition to physical therapy as an aid to recovery. Mrs. Mullins opined that Mrs. Reese's physical condition continued to improve, and that Mrs. Reese reported that she felt much better by the end of treatment.
Dr. James C. McDaniel, an orthopedic surgeon, examined Mrs. Reese on September 11, 1986, for evaluation by Winn Dixie. After taking x-rays and performing a 20 to 25 minute examination, he opined that, based on her oral history, Mrs. Reese suffered a muscle strain, and that there was nothing which would prevent her from returning to her normal activities.
The jury returned a special verdict and itemized the damages as follows:

"(a) Past and future physical
 pain and suffering .................... $ 5,000.00
 (b) Shock ................................. -0-
 (c) Past and future pain and
 suffering, anguish, humiliation,
 embarrassment and
 anxiety ............................... $ 2,500.00
 (d) Permanent residual disability ......... $75,000.00
 (e) Medical bills and treatment
 incurred to date (past,
 present and future) ................... $ 2,800.00
 (f) Expected future medical
 care .................................. $ 5,000.00
 TOTAL DAMAGES .............. $90,300.00"

Counsel for defendant admitted at oral argument before this court that the jury award of $5,000 for past and future physical pain and suffering was the amount he *75 recommended the jury return. We also find the record supports this award; therefore, we affirm this item of damages by the jury. We also affirm item (b), (c) and (e) of the special verdict form by the jury.
We find the record does not support the awards for permanent residual disability (d), and expected future medical care, (f); therefore, we will delete these awards and recast the judgment.
For the foregoing reasons, the judgment of the trial court as to damages is amended and the judgment is recast as to damages only; in all other respects, the judgment of the trial court is affirmed. IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment in favor of plaintiff, Laura J. Reese, and against the defendant, Winn-Dixie of Louisiana, Inc., for damages in the sum of $10,300, with legal interest from April 17, 1986, until paid. Costs of this appeal are assessed to Laura J. Reese.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[1] Appellate courts may render judgments on the merits when the trial court has made a consequential but erroneous ruling on the exclusion or admission of evidence. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Since we have the entire record before us and a remand would only further delay the final outcome of this matter, we shall review the damages.