388 So.2d 442 (1980)
LANIER BUSINESS PRODUCTS, INC., Plaintiff-Appellant,
v.
FIRST NATIONAL BANK OF RAYVILLE, Defendant-Appellee.
No. 14211.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
*443 Charles W. Robinson, West Monroe, for plaintiff-appellant.
Cotton, Bolton, Roberts & Hoychick by John Hoychick, Rayville, for defendant-appellee.
Before HALL, JASPER E. JONES, and FRED W. JONES, JJ.
*444 HALL, Judge.
Lanier Business Products, Inc. sued the First National Bank of Rayville to recover the purchase price of a microfilm camera system, with an endorser package, alleged to have been sold by plaintiff to defendant under a sales order signed by defendant's president on November 10, 1977. Defendant denied liability, contending that the sales order was not a completed contract but was subject to defendant's final evaluation and approval and, further, that there was an unreasonable delay in delivery of the complete system which justified defendant in refusing delivery. After trial, the district court found that a clause contained in the printed sales order form made the order subject to trial and evaluation and that the delay in providing the machine for testing purposes was unreasonable, justifying cancellation of the order. From a judgment rejecting its demands, plaintiff appealed. For reasons expressed in this opinion, we reverse the judgment of the trial court and render judgment in favor of the plaintiff.
In the fall of 1977 the bank was interested in purchasing a new microfilm and endorser system to replace its existing Kodak system on which the warranty and service agreement was to expire on December 31. Discussions were had between a sales representative of plaintiff, which was installing a sound system in the bank's new building under construction, and Phillip F. Stafford, president of the bank. After Stafford reviewed brochures and discussed the matter with some of his personnel, a sales order form was filled out by the sales representative describing the equipment and setting forth the price which was $3,650 for the microfilm unit, $800 for the endorser package, plus tax of $222.50, or a total of $4,672.50. Also included in the sales order was a service policy. The sales order form was signed at the bottom on a line which appears as follows: "ORDER APPROVED BY: s/Phillip F. Stafford."
Plaintiff did not keep this equipment in stock and specially ordered it from Canon, a Japanese manufacturing company. The microfilm unit was manufactured in Japan, shipped to New York, and then shipped to plaintiff. The endorser package was manufactured at a Canon installation in New York and was shipped separately to plaintiff.
Plaintiff received the microfilm unit and delivered it to the bank on or about February 1, 1978, without the endorser package. The endorser package was not received in Lanier's Monroe office until late February or early March, 1978. On March 28, Lanier personnel went to the bank, picked up the microfilm unit, and took it to the Monroe office to attach the endorser. At this time they were told by Stafford that the bank did not want the equipment. Stafford later refused delivery of the completed unit and said the bank would not pay for it.
In the meantime, in the latter part of January or the early part of February, Stafford had discussions with representatives of the Eastman Kodak Company and a new Kodak microfilm camera and endorser system was installed in the bank, for evaluation and comparison purposes according to Stafford. The Kodak unit was invoiced to the bank on February 10, 1978 and was paid for by the bank the latter part of April.
In support of its contention that the sales order to Lanier was not a binding contract but was subject to evaluation and approval by the bank, defendant relies on the following clause in the contract:
"The undersigned acknowledges receipt of the above listed equipment for the purpose of conducting a final approval evaluation and agrees to return to Lanier Business Products, Inc., upon demand, in good condition, the listed equipment or to pay the value at list price of such equipment which he cannot or refuses to return.
Received: ________"
The printed form used by Lanier is a multipurpose form, used both for orders for equipment and for delivery of equipment on approval. The clause quoted above and relied on by the bank is not applicable to the instant transaction because it is an express *445 acknowledgment of receipt of listed equipment and there was no delivery or receipt of any equipment in this case at the time the sales order form was signed. The inapplicability of that clause is further illustrated by the fact that Stafford did not sign the line marked "Received" following that clause on the form. Rather, Stafford signed the line marked "Order Approved By:" on the form.
Stafford testified that he would not have agreed to buy and pay for the equipment without first testing it to make sure it performed the function for which it was being purchased. Certainly, under principles of warranty and redhibition, the bank would not have been obligated to pay for the equipment if it would not perform the function which it was represented to perform and for which it was purchased by the bank. Here, however, the bank never conducted any test or evaluation of the equipment. The microfilm unit was in the bank several weeks and could have been tested during that period but was not. The bank refused to allow delivery of the complete unit after the endorser package was attached and never tested the complete unit. There is no evidence in the record that the equipment would not, in fact, perform as represented and expected.
There is nothing in the contract or in the law generally which gave the defendant, at its own discretion, the right to cancel or terminate its agreement to purchase.
The written contract does not specify a delivery date. Under these circumstances parol evidence is admissible to explain this ambiguous portion of the contract. Southern Hardware Co., Ltd. v. Honeywell Information Systems, Inc., 373 So.2d 738 (La.App.2d Cir. 1979), writ refused 376 So.2d 319 (1979). However, the testimony of Stafford and the Lanier sales representative does not establish any agreement as to a delivery date. Stafford testified that he wanted the new unit after the bank moved into its new building, which was in December 1977, and at the time the warranty expired on the old unit, which was December 31, 1977. The sales representative testified that it ordinarily takes 60 or 90 days to receive equipment ordered from Canon. The testimony does not, however, establish that the sale was conditioned on any particular delivery date or deadline.
Even though a delivery date was not specified in the contract, every sales contract implies an obligation to deliver within a reasonable time. Failure to deliver within a reasonable time gives the buyer the option of cancelling the sale. LSA-C.C. Art. 2485. What is a reasonable time is to be determined by the particular circumstances surrounding the particular sale. See H. T. Cottam & Co. v. Moises, 149 La. 305, 88 So. 916 (1921); Morvant v. Russell & Clemmons, 11 So.2d 45 (La.App. 1st Cir. 1942).
Here, the sales order was signed on November 10, 1977. Plaintiff tendered the complete unit on or about March 28, 1978, some 4½ months later. Our view is that this was not an unreasonable time for delivery of the complicated and complex office equipment ordered from a foreign manufacturer. The circumstances surrounding this particular sale strongly indicate that early delivery was not an essential part of the contract. The bank had a Kodak unit which was performing the needed function satisfactorily and which the bank continued to use until it installed the new Kodak unit, at which time it had both the old and new units available. At the time the Canon microfilm unit was delivered the first part of February, Stafford made no complaint and raised no issue about delivery of the completed unit, other than to tell plaintiff that he would like to have the completed unit as soon as possible. There was no further communication by Stafford to plaintiff concerning a need for delivery up to the time when the completed unit was available and Stafford notified plaintiff he no longer wanted it. There was no putting in default and plaintiff was not given an opportunity to comply with any required delivery deadline.
Under these circumstances a delay of 4½ months was not an unreasonable period of *446 time, did not constitute a breach of the contract by plaintiff, and did not justify defendant in cancelling the contract.
There being a binding sales contract, accompanied by a tender of delivery of the items sold by plaintiff within a reasonable time, plaintiff is entitled to enforce the contract and to recover the agreed purchase price of $4,672.50.
Plaintiff urges on appeal that it is also entitled to recover attorney's fees under a clause in the sales order form providing that purchaser agrees to pay all costs of collection, if necessary, including attorney's fees as allowed by law and actual court costs. Plaintiff did not allege or pray for attorney's fees in its petition and raises the issue for the first time in its brief on appeal. Attorney's fees are items of special damages and must be specifically alleged. LSA-C.C.P. Art. 861; Townsend v. Cleve Heyl Chevrolet-Buick, Inc., 318 So.2d 618 (La.App. 2d Cir. 1975); McGowan-Rigsby Sup., Inc. v. Charles Carter & Co., Inc., 268 So.2d 716 (La.App. 1st Cir. 1972). There being no allegations in the petition or any evidence at the trial constituting fair notice to the defendant that plaintiff claimed attorney's fees, recovery cannot be allowed for this item of special damage. Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir. 1979), cited by plaintiff, is not applicable because it involved a claim for items of general damages. Boudreaux v. Mazda Motors of America, Inc., 347 So.2d 504 (La.App. 4th Cir. 1977), citing LSA-C.C.P. Arts. 862 and 2164, allowed recovery of attorney's fees for services rendered on appeal in a situation similar to the instant case where they were not prayed for (except in brief) or awarded in the trial court. We decline to follow that case here, being of the opinion it would not be just, legal or proper to award on appeal an item of special damage not claimed or put at issue in any manner in the trial court.
For the reasons assigned, the judgment of the district court is reversed. Judgment is rendered in favor of plaintiff, Lanier Business Products, Inc., and against defendant, First National Bank of Rayville, in the amount of $4,672.50, together with legal interest thereon from March 28, 1978 until paid, and all costs of this suit.
Reversed and rendered.