467 So.2d 194 (1985)
Joe FREEMAN, Plaintiff-Appellee,
v.
HAROLD DICKEY TRANSPORT, INC., et al., Defendants-Appellants.
No. 84-273.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1985.
*195 Gahagan and Gahagan, Marvin F. Gahagan, Natchitoches, for defendants-appellants.
Watson, Murchison, Crews, Arthur & Corkern, William P. Crews, Jr., Wright and Wright, Stuart Wright, Natchitoches, for plaintiff-appellee.
Before FORET, STOKER, and KNOLL, JJ.
KNOLL, Judge.
This is a consolidated case involving damage awards for personal injuries from an automobile accident. Gloria Dail (Dail), the driver of one of the automobiles involved in the accident, and Joe Freeman (Freeman), a guest passenger in the Dail vehicle, filed separate suits against Lester Smithart, Jr., the driver of the tractor-trailer who caused the accident, Harold Dickey Transport, Inc. (Dickey), the owner of the tractor trailer, and Dickey's insurer, United States Fidelity and Guaranty (USF & G), for injuries, medical expenses and property damage Dail and Freeman sustained.
The trial court rendered judgment in favor of Gloria Dail and against the three defendants in the amount of $27,500 together with medical expenses. Judgment was also granted in favor of Freeman and against the three defendants in the sum of $225,000 for general damages, $672,458 for past and future lost wages, and all medical expenses.
Smithart, Dickey and USF & G (hereafter the defendants) have appealed and raise the following issues: the trial court (1) erred in considering evidence of Freeman's economic loss exceeding the amount pleaded; (2) was manifestly erroneous in its award for Freeman's economic loss; and (3) was clearly wrong in its general damage award to Dail. Freeman answered the appeal requesting an increase in his general damage award.

ENLARGEMENT OF PLEADINGS
The defendants contend the trial court committed reversible error in considering evidence of Freeman's economic loss *196 exceeding $500,000, the amount pleaded in his petition, despite defendants' timely objection to any enlargement of the pleadings. We agree.
Items of special damages must be specifically alleged. LSA-C.C.P. Art. 861; Lanier Business Products, Inc. v. 1st Nat'l Bank of Rayville, 388 So.2d 442 (La. App. 2d Cir.1980). The general rule is that a litigant can not recover an amount greater than that for which he prayed in his petition. Smith v. Moncrief, 421 So.2d 1127 (La.App. 3rd Cir.1982), writ denied, 426 So.2d 177 (La.1983). The sole exception to this rule involves situations when otherwise inadmissible evidence of special damages is admitted without objection and the pleadings are enlarged to that extent. LSA-C.C.P. Art. 1154; Ehrhardt v. Cummins, 369 So.2d 213 (La.App. 3rd Cir.1979), writ denied, 369 So.2d 1366.
Freeman's petition itemizes his damages for past and future loss of wages at $500,000. Defendants timely objected to the evidence of Freeman's economic losses which exceeded those itemized in his petition. Further, we find that Freeman's attorney stipulated that his pleadings should not be enlarged by the testimony of his expert economist, Dr. Earl Thames. Since Freeman's pleadings were not expanded through the admission of evidence of additional economic losses, his relief is confined to his pleadings, and we shall reduce his award for past and future lost wages accordingly.

LOSS OF INCOME, PAST AND FUTURE
The defendants contend that the trial court was clearly wrong in awarding Freeman, a 59 year old heavy equipment operator with annual earnings of less than $15,000, the sum of $672,458 for his losses of past and future income. Defendants attack the trial court's calculation of economic loss based on Freeman's net income and his loss of earning capacity. We reduce Freeman's award for future income, finding that the trial court was clearly wrong in basing its award on Freeman's ability to work until age 70.
Future loss of earnings is speculative and can not be calculated with absolute certainty. Robinson v. Graves, 343 So.2d 147 (La.1977). Damages for loss of future earnings or loss of future earning capacity is based on the injured person's ability to earn money, rather than on what he actually earned prior to the injury. Merrell v. State, Through Dept. of Transp., 415 So.2d 660 (La.App. 3rd Cir. 1982), writ denied, 420 So.2d 443; Folse v. Fakouri, 371 So.2d 1120 (La.1979). Actual earning capacity at the time of injury, although relevant, is not necessarily determinative of the injured person's future ability to earn. Green v. Farmers Ins. Co., 412 So.2d 1136 (La.App. 2d Cir.1982); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). In computing wage loss it is proper to base the economic computations on gross income. Holmes v. Texaco, Inc., 422 So.2d 1302 (La.App. 5th Cir.1982); Lute v. City of Lake Charles, 394 So.2d 736 (La.App. 3rd Cir.1981).
Because of the speculative nature of an award for future loss of income there is no right formula in arriving at an award. Rather, the trial court must exercise sound discretion and award an amount that is fair to both litigants while not being unduly oppressive to either. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La. App. 1st Cir.1982); Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). In reaching an award for lost wages the trial court should consider the following factors: the injured party's age, life expectancy, work life expectancy, any discount rate and inflation factor which may be applicable, the annual wage rate increase, probable future earning capacity, and the loss of future earning ability and capacity. Unbehagen, supra; Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980).
Freeman is 59 years of age and it is undisputed that he will never be able to return to work. He was a union member working as a heavy equipment operator in *197 the pipeline industry throughout the United States.
Dr. Earl G. Thames testified for Freeman and Dr. Kenneth J. Boudreaux testified for the defendants as expert economic consultants.
Dr. Thames examined Freeman's tax returns from 1978-1982, as well as the collective bargaining agreement between the National Pipeline Workers Union and the Operating Engineers, a wage history of union pipeliners in Louisiana between 1976 and 1982, and the wage history of union wages for building trades between 1976 and 1983. He calculated Freeman's annual wages as of the time of the accident on his actual tax return for 1982 and determined his annual pre-tax wage to be $29,958.39. He concluded Freeman lost wages between the time of the accident and trial in the amount of $33,816. He projected Freeman's annual income and fringe benefits for 5.8 years to age 65, his actuarial work life expectancy, to be $300,219; to age 68 to be $519,296; and to age 70 to be $634,339. The trial court awarded $634,339 for lost wages and fringe benefits from the date of trial to age 70, $33,816 for lost wages and $4,303 for fringe benefits from the accident to the date of trial for a total of $672,458.
In light of the prevailing case law which indicates a permissibility to use gross wages and to base loss of earning awards on the loss of earning capacity, we can not say the trial judge was clearly wrong in his reliance on these elements. However, we can not say that Freeman proved by a preponderance of the evidence that he could have worked beyond his actuarial work life expectancy. The possibility of working past age 65 must be regarded as speculation. Lanclos v. Hartford Acc. & Indem. Co., 366 So.2d 621 (La.App. 3rd Cir.1978). Freeman testified he had no intention of retiring at the time of the accident. Fellow union workers said that it was not uncommon for someone in the pipeline industry to work to age 70; however, we find that the medical evidence taken as a whole does not establish with such a certainty that Freeman could have worked beyond his projected work life expectancy. We therefore find the trial court was clearly wrong in awarding future lost wages to age 70. Accordingly, we reduce Freeman's award of future lost wages and fringe benefits to $300,219, the sum calculated by Dr. Thames from the date of trial up to Freeman's actuarial work life expectancy. For these reasons we shall amend the judgment of the trial court reducing Freeman's total loss of wages and fringe benefits, past and future, to $338,338.

FREEMAN'S GENERAL DAMAGES
Freeman has answered the appeal asking for an increase of his $225,000 general damage award. We find the award excessively low and raise it accordingly.
Freeman was a guest passenger in a pickup truck driven by Dail. As Dail attempted to overtake an 18 wheeler carrying 28,000 pounds of frozen chickens, the 18 wheeler forced Dail's truck off the road and onto the shoulder where it lost control in the loose gravel. Freeman was apparently thrown through the rear window of the pickup during the accident, smashed his head against the tailgate, and broke his neck. In its reasons for judgment the trial court summarized Freeman's injuries as follows:
"1. fracture of C-1, C-2, C-2, and odontoid process with spinal fusion of C-1 and C-2, and cerebral concussion
2. severe lipping of C-4, C-5 with degenerative arthritic condition in C-6
3. multiple rib fractures on both sides
4. both lungs punctured, resulting in pneumothorax of both lungs
5. chest tubes placed in both lungs
6. remained in intensive care from April 29, 1982 through June 5, 1982
7. remained in hospital from April 29, 1982 through June 10, 1982
8. tracheotomy performed, resulting in some impairment of voice

*198 9. severe phlebitis in right leg subsequent to discharge from VA hospital

10. bone graft removed from right hipscar constantly itches; scar on neck where tracheotomy was performed; scar under both armpits where chest tubes were placed; scar on right leg
11. still experiencing headaches on a daily basis
12. constantly short of breath
13. can walk only short distances before becoming exhausted
14. able to sleep only for short periods of time
15. vision blurs from time to time
16. motion impairment of neck (up and down as well as side to side)
17. constant risk of paralysis (total) as a result of severe injury to cervical spine
18. reactive depression secondary to injury."
Before an appellate court can disturb an award by a trial court, the record must clearly reveal that the trier-of-fact abused its discretion in making its award. Coco, supra. Once an appellate court has determined that the trial court abused its much discretion, it can disturb the award only to the extent of raising it (or lowering it) to the lowest (or highest) point which is reasonably within that court's discretion. Coco, supra.
The quality of Freeman's life has been substantially reduced as a result of the accident. For the remainder of his life it is unlikely that he will ever have a pain-free day, and he is highly susceptible to paralysis or death if he is involved in another accident. Prior to his injury Freeman enjoyed life and was a productive member of society. As a result of the accident he is now crippled, and unable to work or socialize; because of constant pain, shortness of breath, and limitation of movement, he can no longer hunt or fish. Freeman has constant headaches and backaches, and is unable to sleep for any extended time. Because of his pain and the drastic change of his life, Freeman has a negative outlook on life to such an extent that he has developed marked suicidal tendencies.
Freeman's injuries are painful, disabling and permanent. We find that the lowest amount of general damages which could have been awarded is $400,000, and amend the judgment accordingly.

DAIL'S GENERAL DAMAGES
The defendants contend that the award of $27,500 for Dail's injuries was excessive. Their argument is simply that prior jurisprudence has not been that generous in awards for the removal of a spleen.
Damage awards may not be generalized to conform with other comparable decisions; rather damage awards must be particularized for each injured victim according to the specific circumstances involved. Coco, supra.
Initially, as a result of the accident, Dail suffered a fractured clavicle and had her ruptured spleen removed. As a consequence of the surgery Dail suffered an internal infection which necessitated her hospitalization for an additional week. Shortly thereafter, Dail returned to the hospital with a blocked corated artery in the neck, probably the result of surgery; treatment was begun and was administered for one week before she was finally released.
Given these facts, we do not find the trial judge abused its "much discretion" in assessing general damages. Reck v. Stevens, 373 So.2d 498 (La.1979).
For the foregoing reasons, the judgment of the trial court is amended to provide as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of plaintiff, JOE FREEMAN, and against defendants, HAROLD DICKEY TRANSPORT, INC. and its insurer, UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, jointly, severally, *199 and in solido, for the sums hereinbelow shown, with UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY being solidarily liable to the extent of its limits of coverage provided by its policy issued to HAROLD DICKEY TRANSPORT, INC., said policy limits being $500,000.
(a) for general damages in the sum of FOUR HUNDRED THOUSAND ($400,000) DOLLARS;
(b) for loss of earnings, past, present, and future, including loss of earning capacity, in the full sum of THREE HUNDRED THIRTY-EIGHT THOUSAND THREE HUNDRED THIRTY EIGHT ($338,338) DOLLARS.
In all other respects the judgment is affirmed. All costs of this appeal are assessed to the defendants-appellants.
AFFIRMED AS AMENDED.