526 So.2d 1307 (1988)
Vance USHER, et al., Plaintiffs-Appellants,
v.
David G. GONGRE, et ux., Defendants-Appellees.
No. 87-260.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1988.
Smith, Taliaferro, Seibert, Boothe & Purvis, V. Russell Purvis, Jonesville, for plaintiffs-appellants.
J.P. Mauffray, Jr., Jena, for defendants-appellees.
Martin S. Sanders, Jr., Winnfield, for intervenor-appellee.
Before FORET and LABORDE, JJ., and REGGIE,[*] J. Pro Tem.
*1308 EDMUND M. REGGIE, Judge Pro Tem.
The primary issue presented by this appeal is whether or not the trial court's award of damages and attorney's fees for wrongful issuance of a writ of attachment was excessive.
Vance Usher and Usher & Associates (hereinafter plaintiffs) filed suit against David and Kathy Gongre (hereinafter defendants) seeking a temporary restraining order and a preliminary injunction preventing the sheriff of LaSalle Parish from selling oilfield equipment seized through a writ of fieri facias obtained by the defendants. Mr. Usher, who is a Texas domiciliary, alleged in his petition that a prior default judgment granted in favor of defendants was a nullity because the trial court lacked jurisdiction over his person and, as such, had no legal power or authority to enter a money judgment against him.
The trial court issued a temporary restraining order, pending a hearing on plaintiff's request for a preliminary injunction. In response, defendants filed a motion to dissolve the temporary restraining order, requesting that plaintiff's action for injunctive relief and nullity be dismissed. Defendants alleged that the temporary restraining order was wrongfully issued because the court had valid jurisdiction to render a money judgment against plaintiff under LSA-C.C.P. Art. 9[1] and that they were entitled to damages, including attorney's fees. After a trial on the merits, the trial judge announced that he would take all matters under advisement. Six months later a judgment was rendered in favor of defendants denying plaintiff's request for a preliminary injunction and awarding defendants $9,552.08 in damages and $5,000.00 for attorney's fees. After an examination of the record before the court, we affirm the trial court's judgment but amend his award of damages to conform with this court's finding hereinafter presented.
FACTS
This suit arose from a matter captioned David Gongre, et ux. v. Vance Usher, et al., Civil Suit Number 21,601, Twenty-Eighth Judicial District Court, LaSalle Parish, Louisiana wherein, by judgment dated October 31, 1985, David and Kathy Gongre obtained judgment against Vance Usher and Usher & Associates, cancelling a mineral lease and extension agreement. In addition, the judgment awarded damages in the amount of $3,408.00 plus interest and attorney's fees and maintained a writ of nonresident attachment upon oilfield equipment used to produce the two wells on the Gongre lease located in LaSalle Parish, Louisiana.
On December 20, 1985, subsequent to the cancellation of plaintiff's lease, defendants granted a mineral lease on the same property to J.O. Brewton, Jr., who held leases and operated 21 oil wells on surrounding property.
After the delays for suspensive appeal expired, the Gongres requested the seized property to be sold to satisfy the money judgment. Pursuant to that request a writ of fieri facias was issued by the district court on December 17, 1985 and a sheriff's sale was scheduled for January 15, 1986. After the oilfield equipment was seized by the sheriff, Mr. Gongre signed a document promising to be the keeper of the property located on the lease pending further litigation. Mr. Brewton was to start operating the lease after the sheriff's sale.
The delays for all appeals from the October 31, 1985 judgment expired on January 13, 1986, but the record contains no appeal from said judgment. A motion for a new trial was filed later, but dismissed orally by the plaintiffs on April 21, 1987.
On January 14, 1986, plaintiffs filed the present suit seeking a temporary restraining *1309 order and preliminary injunction to enjoin the sheriff's sale and an order by the court declaring the October 31, 1986 judgment a nullity. The trial court issued a temporary restraining order preventing the sale of plaintiffs' property and scheduled the hearing of plaintiffs' rule for 9:00 A.M. on February 3, 1986. Under the terms of the temporary restraining order, the expiration date was set for 11:00 A.M. on the same morning.
On January 16, 1986, defendants filed a motion to dissolve the temporary restraining order. In their motion, defendants requested damages for lost oil production, allegedly caused by the delay in the sheriff's sale of plaintiffs' oilfield equipment, and attorney's fees incurred in their attempt to dissolve the injunction. In addition, defendants filed peremptory and dilatory exceptions requesting that plaintiffs' actions for injunctive relief and nullity be dismissed.
A hearing was held on February 3, 1986 on plaintiffs' rule for a preliminary injunction, together with defendants' rule for damages and attorney's fees and the various exceptions related to the temporary restraining order and injunction. At the conclusion of the hearing, the trial court took all matters under advisement. Plaintiffs requested that the temporary restraining order be extended, but this request was denied.
On February 5, 1986, the defendants requested another writ of fieri facias from the clerk of court. The writ was issued and plaintiffs' property was sold at sheriff's sale on March 12, 1986. On August 13, 1986 the trial judge rendered judgment on the matters considered at the February 3, 1986 hearing by minute entry of the same date. This judgment was signed on August 18, 1986. The judgment denied the preliminary injunction, although this issue was moot at the time, and awarded damages to the defendants for wrongful issuance of the temporary restraining order in the amount of $9,552.08 and attorney's fees in the amount of $5,000.00.
The judgment provided in pertinent part as follows:
"The Court is of the opinion that the Temporary Restraining Order was wrongfully issued and therefore the Gongres are entitled to damages and attorney fees. The records in 21,889 and 21,601 disclose a 54 day delay in the sheriff's sale thereby preventing the operation of the lease and support an award to the Gongres as follows:

(Assuming $28.50 per barrel)
(a) For 120 barrels in tank 749.81
(b) Plus legal interest for
 45 days 11.09
(c) 2/3 of appraised value
 of seized items 7,166.67
(d) Plus legal interest for
 45 days 106.03
(e) Lost revenue4.5 barrels
 per day for 45
 days 1,518.48
 ___________
 TOTAL $9,552.08"

DAMAGES FOR WRONGFUL ISSUANCE OF TRO
Plaintiff's first contention on appeal is that the trial judge's award of damages in this matter has no basis in law or fact and is not supported by the pleading submitted by the defendants or evidence adduced during the trial. We agree.
LSA-C.C.P. Art. 3608, in part, provides:
"The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand."
As a general rule, the trial judge may grant any relief to which a party is entitled under the evidence presented. LSA-C.C.P. Art. 862; Gremillion v. Rapides Parish Police Jury, 430 So.2d 1362 (La.App. 3 Cir.1983), writs denied, 435 So.2d 426, 440 (La.1983).
However, before items of special damages may be awarded, they must be specifically alleged. LSA-C.C.P. Art. 861; Lanier Business Products, Inc. v. 1st National Bank of Rayville, 388 So.2d 442 (La.App. 2 Cir.1980). As noted by this court in Freeman v. Harold Dickey Transport, Inc., 467 So.2d 194 (La.App. 3 Cir. 1985):

*1310 "The sole exception to this rule involves situations when otherwise inadmissible evidence of special damages is admitted without objection and the pleadings are enlarged to that extent. LSA-C.C.P. Art. 1154; Ehrhardt v. Cummins, 369 So.2d 213 (La.App. 3rd Cir.1979), writ denied, 369 So.2d 1366 [ (La.1979) ]." 467 So.2d at 196.
The record reflects defendants alleged in their motion that the two wells on their lease were capable of producing nine barrels of oil per day. Using a rate of $25.80 per barrel of oil, defendants projected their daily loss of gross income from their lease at $56.24, which represents their owners' royalty of one-quarter, minus a severance tax of .0312. Defendants also alleged they were entitled to additional damages in the amount of $749.81. They contend on appeal that this amount represents the loss of the use of money they would have received from the sale of 120 barrels of oil stored upon the lease, but for the temporary restraining order. At the conclusion of their motion, defendants made the following prayer for damages:
"MOVERS PRAY THAT VANCE USHER AND USHER & ASSOCIATES show cause on 3rd day of February, 1986, at 9:00 O'clock a.m. why: a) the temporary restraining order issued herein on January 14, 1986, upon their petition should not be dissolved; and b) there should not be judgment in favor of movers and against respondents, in solido, awarding damages in the amount of $749.81, plus $56.24 per day commencing January 16, 1986, at 12:00 noon, plus legal interest thereon, plus attorney's fees in the amount of $4,800.00, plus $120.00 per hour for each hour over 40 spent by said attorney upon this action...."
We find no allegations or evidence indicating defendants were entitled to $7,166.67, which represents 2/3 of the appraised value of the seized oilfield equipment. As this item of damage was not alleged in the pleadings addressed at trial, we find the trial judge abused his discretion in awarding this amount.
We must also note that the record discloses the trial judge erred in his calculations of the delay. Not counting the scheduled day of the first or second sheriff's sale, our computations show there was a 55 day delay period, and not 54 or 45 days as indicated by the judgment. Any award of damages will be based on this period of delay.
In addition, we find no factual basis for awarding defendants $749.81 for the 120 barrels of oil stored on the defendants' property. It is a well settled principle that only actual damages are allowable and these must be established with reasonable certainty. Our Supreme Court has held, "actual damages cannot be established by remote and conjectural estimates of loss." A.N. Goldberg v. Delerno, 225 La. 568, 73 So.2d 464, 465 (1954). Defendants did not contend in their pleadings or at trial that they were permanently deprived of their 25% royalty due to the delay in the sheriff's sale. The only testimony offered at the hearing concerning this item of damage was by defendants' subsequent lessee, Mr. Brewton. He stated that he was prohibited by the Department of Conservation from selling the 120 barrels of stored oil while ownership of the property was still in dispute. After the 55 day delay period had elapsed, the oil was still in the possession of the defendants and was eventually sold to pay damages awarded to them by the prior default judgment.
Accordingly, we find the defendants' alleged loss of $749.81 in the instant case was not established with reasonable certainty and, therefore, we must amend the trial court's judgment to also delete this amount.
The only item of damage supported by the record is that for lost revenues; however, we are of the opinion that the testimony presented at the hearing does not support, with any degree of certainty, a finding that the two wells located on the Gongre property were capable of producing a total of nine barrels per day.
Defendants' primary witness on this issue was Mr. Brewton. Although he is not *1311 an expert in geology or petroleum engineering, the trial court accepted him as an expert "operator." Mr. Brewton testified that on January 15, 1986, the date originally scheduled for the sheriff's sale, he was prepared to take over the operation of the lease previously held by Mr. Usher. He further stated that he was delayed in his efforts to resume production because he could not by law remove the pump and other equipment seized by the sheriff.
When asked how many barrels of oil per day the two existing wells on the lease could produce, he conjectured that each well was capable of producing 3.5 barrels daily. He arrived at this estimate by referring to the production of the 14 wells on a nearby tract which is under lease to him. Since the Gongre wells are newer, he was of the opinion that he might even be able to initially produce a total of 9 barrels (4.5 barrels from each well).
This testimony was directly contradicted by that of Mr. Usher who was tendered and accepted by the court as an expert in petroleum engineering and geology. Mr. Usher made a distinction between the lease held by Mr. Brewton and the lease on the Gongres' property. He explained that because of the location of the two wells on the Gongre tract, there is an extreme difference between the two tracts in terms of productivity and duration of production. He characterized the reservoir underlying both tracts as being a "bottom water drive" system. He explained that the oil productive sand lays above a common water datum and is in a hexical shape with the highest point underlying Mr. Brewton's lease. In a bottom water drive system, water encroaches from the bottom, pushing the oil directly to the top of the hexical structure. In his opinion, Mr. Brewton's wells will be the most long-lived and most productive wells in the field.
He stated in the Gongre tract, in contrast, is on the fringe of the hexical structure and as a result will be the least productive and would go to water most quickly. Given the four years of prior development and large amount of production in the area, it was his opinion that the Gongre tract is extremely suspect.
He mentioned that on two adjacent leases other operators drilled wells prior to his and, after reviewing data compiled on logs, chose to plug and abandon these wells because the logs did not indicate the potential pay to be productive. He testified that he chose to complete his well because his data indicated the well to be marginal and he could at least recoup his investment.
He stated that according to his most recent production history from the Gongre No. 1 well, taken May, 1985, the average production of one barrel per day for that well was possible, but because of the large number of wells in the field, he did not think the wells could sustain that amount today.
The trial judge weighed the credibility of these two experts and apparently chose to use the estimates provided by Mr. Brewton. On appeal, a trial court's evaluation of credibility will not be disturbed unless the record reveals the trial court's decision was manifestly erroneous or clearly wrong. Ward-Steinman v. Karst, 465 So.2d 227 (La.App. 3 Cir.1985). However, in the instant case, we find that the trial court was clearly wrong in relying on production estimates which were conjectural and unsupported by relevant data. Due to Mr. Usher's expertise in evaluating hydrocarbon production and past experience on the Gongre tract, we will accept his evaluations and amend the award for lost revenues to reflect a loss of two barrels (one barrel per well) per day for 55 days.

ATTORNEY'S FEES
Plaintiffs also contend on appeal that the $5,000.00 award for attorney's fees was improper because the temporary order had expired before the hearing of this matter and there was no necessity to have the temporary restraining order dissolved.
La.C.C.P. Art. 3608 also provides:
"Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element *1312 of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits."
The trial court issued the temporary restraining order on January 14, 1986. The order contained language stating, "this restraining order shall expire at 11:00 A.M. on February 3, 1986." Thereafter, defendants filed a motion to dissolve the temporary restraining order on January 16, 1986. The hearing on plaintiff's rule for a preliminary injunction, defendants' motion to dissolve the temporary restraining order and damages was scheduled for February 3, 1986, at 9:00 A.M. Thus, once the hearing commenced, the issue of whether the temporary restraining order should be dissolved was moot. The primary focus of the hearing was whether plaintiffs were entitled to a preliminary injunction and whether defendants were entitled to damages. Where a temporary restraining order has expired by law before a hearing is had to determine if it should be dissolved, attorney's fees have generally been denied. Cook v. Ed Francis Chevrolet, Inc., 365 So.2d 1178 (La.App. 3 Cir.1978); Copellar v. Yount, 361 So.2d 971 (La.App. 3 Cir. 1978), writ denied, 363 So.2d 534 (La.1978); Lighthouse Life Ins. Co., Inc. v. Rich, 343 So.2d 444 (La.App. 3 Cir.1977). Nor is there any statutory authority for allowing attorney's fees for simply defending a rule for a preliminary injunction. Lighthouse Life Ins. Co., Inc., supra.
For the above reasons, the judgment of the trial court is amended to delete the award for attorney's fees and reduce the award for damages from $9,552.08 to $687.50 using the following computations:

(Price/barrel of oil) (lessors' royalty) (Profit)
 $25.80 × .25 = $ 6.45
 Daily Production in barrels × 2
 ________
 Daily Revenue 12.90
 .0312 tax - .40
 ________
 Net Daily Revenue 12.50
 Day sale was delayed × 55
 ________
 Total award $687.50

All costs of this appeal are assessed against the defendants-appellees.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[*] Judge Edmund M. Reggie, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] LSA-C.C.P. Art. 9 provides:

"A court which is otherwise competent and under the laws of this state has jurisdiction to render a money judgment against a nonresident not subject personally to the jurisdiction of the court only if the action is commenced by an attachment of his property in this state. Unless the nonresident subjects himself personally to the jurisdiction of the court, the judgment may be executed only against the property attached.